UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :        Crim. No. 3:16CR140 (VAB)

v.                                :

PATRICIA LAFAYETTE                :        VIOLATION: 18 U.S.C. Section 1347
                                           (Health Care Fraud)

INFORMATION

The United States Attorney charges:

COUNT ONE
(Health Care Fraud)

Introduction

At all times relevant to this Information:

1.      The defendant, PATRICIA LAFAYETTE ("LAFAYETTE"), was a resident of Torrington, Connecticut.  At no time was LAFAYETTE licensed by the State of Connecticut to provide psychotherapy.

2.      The Connecticut Medicaid program was a health care benefit program in which medical benefits, items, and services were provided to Medicaid clients in Connecticut.  The Connecticut Medicaid program was jointly funded by the State of Connecticut and the federal government.  In Connecticut, Medicaid was administered by the State of Connecticut's Department of Social Services.

3.      Anne Charlotte Silver ("Silver"), who is separately charged, was licensed by the State of Connecticut as a marriage and family therapist. In that capacity, Silver operated Silver

1

Counseling Services, LLC, with offices in Canton, Connecticut and Bantam, Connecticut, and was a participating provider in the Connecticut Medicaid program.

<u>LAFAYETTE's Scheme to Defraud Medicaid and Other Health Care Benefit Programs</u>

4.      Between on or about March 1, 2011, and July 31, 2015, in the District of Connecticut and elsewhere, LAFAYETTE knowingly and willfully executed and attempted to execute a scheme and artifice to defraud Medicaid, a health care benefit program as defined under Title 18, United States Code, Section 24(b), and other health care benefit programs, through materially false and fraudulent pretenses and representations, in connection with the delivery of and payment for health care benefits, items, and services; that is, LAFAYETTE submitted and caused to be submitted to Medicaid materially false claims for psychotherapy that represented that Silver had personally provided the psychotherapy services, when as LAFAYETTE well and truly knew, Silver had not in fact performed the psychotherapy services.

Manner and Means

5.      In furtherance of the above scheme and artifice to defraud, LAFAYETTE and others working with LAFAYETTE committed the following acts.

6.      In or about March 2011, LAFAYETTE and another individual, whose identity is known to the United States Attorney and LAFAYETTE and who is identified herein as Individual B, approached Silver. LAFAYETTE and Individual B told SILVER that LAFAYETTE and Individual B operated a social services business, known as Family First Community Support Services, LLC.

7.      LAFAYETTE knew that Individual B proposed the following scheme to SILVER: Individual B and LAFAYETTE would provide social services to their clients or cause social services to be provided to their clients, and these services would be billed to Medicaid and other

health care benefit programs using Silver's Medicaid provider number, as if Silver were the provider who personally rendered the services. These services would be billed as psychotherapy, which under Connecticut state law and Medicaid program regulations can only be provided by a licensed provider. LAFAYETTE, Individual B, and Silver knew that LAFAYETTE and Individual B were not licensed providers in Connecticut, and therefore could not perform psychotherapy.

8.      Under the scheme between LAFAYETTE, Individual B, and Silver, payment for the claims submitted to Medicaid and other health care benefit programs went to a bank account controlled by Silver. LAFAYETTE, Individual B, and Silver agreed that Silver was to keep 25% of the proceeds, and pay the remaining 75% of the proceeds to LAFAYETTE and Individual B.

9.      In or about March 2011, LAFAYETTE, Silver, and Individual B agreed to begin the scheme.

10.     Beginning no later than June 2011, and continuing through in or about July 2015, LAFAYETTE submitted or caused to be submitted to Medicaid and other health care benefit programs claims for psychotherapy services that represented that Silver had personally rendered the psychotherapy service. LAFAYETTE knew that Silver did not perform any of these services and did not in any way supervise LAFAYETTE or individuals working with LAFAYETTE. LAFAYETTE further knew that any services that were provided were performed by individuals who were not licensed to provide psychotherapy, and that the services did not constitute psychotherapy.

11.     The majority of claims that LAFAYETTE submitted and caused to be submitted to Medicaid falsely represented that Silver had personally provided approximately 60 minutes or more of face-to-face psychotherapy with each patient billed.

12.     LAFAYETTE and Silver met frequently so that Silver could provide LAFAYETTE with LAFAYETTE's share of the proceeds of the scheme described above.  For example:

a.      On July 29, 2015, LAFAYETTE met Silver in the town of Litchfield, Connecticut, and Silver handed LAFAYETTE a check in the amount of $12,345 representing LAFAYETTE's 75% share of the proceeds of the scheme for claims submitted to Medicaid during an approximately two-week period shortly before the meeting.

b.      On August 12, 2015, LAFAYETTE met SILVER in the town of Litchfield, Connecticut, and Silver handed LAFAYETTE a check in the amount of $8,387 representing LAFAYETTE'S 75% share of the proceeds of the scheme for claims submitted to Medicaid during an approximately two-week period shortly before the meeting.

13.     Between June 1, 2011, and July 22, 2015, Medicaid and other health care benefit programs paid Silver approximately $1,661,879 for claims for psychotherapy services submitted under LAFAYETTE'S scheme with Silver.  Approximately 95% of this amount was paid by the Connecticut Medicaid program. Silver retained her 25% of the $1,661,879, and paid the remaining 75% to LAFAYETTE.

Execution of the Scheme

14.     On or about July 20, 2012, in the District of Connecticut, in order to execute the scheme and artifice to defraud, LAFAYETTE submitted and caused to be submitted to Medicaid a materially false claim for psychotherapy that represented that Silver personally provided psychotherapy to a patient with initials C.H., when, as LAFAYETTE well and truly knew, she had not in fact performed the psychotherapy services, as follows:

| COUNT | Patient Initials | Date Of Service | Current Procedure Terminology (CPT) Code | Date Claim Submitted | Claim Number | Date Claim Paid |
|-------|------------------|-----------------|------------------------------------------|----------------------|--------------|-----------------|
| 1 | C.H. | 7/19/2012 | 90847 | 7/20/2012 | 2212201600167 | 7/24/2012 |

All in violation of Title 18, United States Code, Section 1347.

UNITED STATES OF AMERICA


DEIRDRE M. DALY
UNITED STATES ATTORNEY


DAVID J. SHELDON
ASSISTANT UNITED STATES ATTORNEY

5